UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, )<br>       )<br>Plaintiff, )<br>       )         1:08-cv-940-SEB-DML<br>vs. )<br>       )<br>TRAVIS WILEY and RYAN BALLMAN, )<br>       )<br>Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff Allstate Insurance Company's ("Allstate") Motion for Summary Judgment [Docket No. 31], filed on August 5, 2009. In its Motion, Allstate seeks summary judgment as a matter of law on its claim that Travis Wiley is not entitled to coverage or a defense under the terms of the Allstate Insurance Policy at issue in this matter. For the reasons detailed in this entry, Plaintiff's Motion for Summary Judgment is GRANTED.

*Factual Background*

*I. The Underlying Lawsuit*

On October 28, 2006, at a pub in Columbus, Indiana, Travis Wiley struck Ryan Ballman, causing him to fall into and hit his head on a pool table. As a result of this incident, Ballman suffered a hematoma of the brain. Compl. ¶ 8. On November 30, 2006, Wiley was charged, in Indiana state court, with one count of Criminal Recklessness

Resulting in Serious Bodily Injury, a Class D felony pursuant to Indiana Code Section 35-42-2-2(d)(1). Wiley pleaded guilty to this charge on June 18, 2007.[1]

After this guilty plea, the state court held a sentencing hearing on July 24, 2007, during which the following exchange occurred between Wiley and the prosecutor:

> Q: So it wouldn't be unreasonable if you struck someone in the head, that they would fall and hit their head on some inanimate object that was near their body was it?
> A: No, ma'am. . . .
> Q: And you said that you intended to hit him, correct?
> A: Yes, ma'am.
> Q: And you knew that, that would hurt him, correct?
> A: Yes, ma'am.

Tr. of Sentencing Hrg. at 57-59.

On February 15, 2008, Ballman sued Wiley for physical and emotional damages in Bartholomew County Circuit Court, Cause No. 03C01-0802-CT-00390. In that underlying lawsuit, Ballman seeks recovery related to, among other things, over $27,000 in medical bills stemming from the injury he suffered on October 28, 2006 after Wiley struck him. Compl. ¶ 5.

## II. Wiley's Allstate Insurance Policy

At all times relevant to the present lawsuit, Wiley held an Allstate Property and Casualty Insurance Company Homeowners Policy ("Policy"). Pursuant to the Policy,

---

[1] At the guilty plea hearing, Wiley expressly acknowledged that he had "knowingly or intentionally inflict[ed] a serious bodily injury on another person, the other person being Ryan A. Ballman." Tr. of Guilty Plea Hrg. at 9.

Allstate agreed to "pay damages which [the] insured person becomes obligated to pay because of bodily injury or property damage arising from an occurrence to which" the Policy applies. Compl. (Ex. B at 22). The Policy also contained a specific exclusion of coverage for the insured's intentional acts:

> 1. [Allstate does] not cover any bodily injury or property damage intended by, or which may reasonably be expected from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
>    . . .
>    b. Such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected.

Id.

Pursuant to this exclusion contained in the Policy, on July 11, 2008, Allstate brought the present action, seeking a declaratory judgment that it owes no coverage or duty of defense to Travis Wiley for any claims resulting from the October 2006 incident involving Ryan Ballman.

### *Legal Analysis*

#### *I. Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty

3

Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

      The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

      Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a party will be unable to satisfy

the legal requirements necessary to establish its case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

## II.  *Application of Indiana Law*

Jurisdiction over this case is based on diversity of citizenship among the parties, and the parties agree that Indiana substantive law governs.  Therefore, we apply Indiana law as we predict the Supreme Court of Indiana would apply it.  Clark v. State Farm Mut. Auto Ins. Co., 473 F.3d 708, 712 (7th Cir. 2007).  Under Indiana law, the interpretation of an insurance policy is a question of law for the Court.  Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992); see also T.R. Bulger Inc. v. Indiana Insurance Co., 901 N.E.2d 1110, 1114 (Ind.Ct.App. 2009) (holding that "the construction of an insurance policy is a question of law for which summary judgment is particularly appropriate").  Where the insurance policy's language is clear and unambiguous, the Court "assign[s] to the language its plain and ordinary meaning."  Id.  If the Court determines that any language in the policy is ambiguous, such ambiguities must be construed in favor of the insured party.  Am. Family Mut. Ins. Co. v. Hall, 764 N.E.2d 780, 784 (Ind.Ct.App. 2002).

## III.  *Whether Allstate Owes Duties of Coverage and Defense Under the Policy*

The sole issue in the present dispute regards whether Allstate owes coverage and a

5

duty of defense to Travis Wiley arising out of the Policy. According to Allstate, because Wiley intentionally struck Ryan Ballman with the intent to harm him, he is not entitled to coverage or defense from Allstate for Ballman's injuries and expenses.

Under Indiana law, "there is no coverage for injuries that are the foreseeable consequence of the insured's intentional or criminal acts." Allstate Ins. Co. v. Barnett, 816 F.Supp. 492, 496 (S.D. Ind. 1993) (McKinney, J.). Allstate contends that both prongs of the test articulated in this rule are met in the case at bar. First, Wiley admitted under oath at his sentencing hearing, as well as at his deposition, that he intentionally struck Ballman (an act that was also criminal, as evidenced by his guilty plea). See Tr. of Sentencing Hrg. at 16, 57-59; Dep. of Wiley at 8-10, 20. Second, according to Allstate, Ballman's injuries were a foreseeable consequence of Wiley's intentional act.

Wiley rejoins that the focus of the inquiry should be on the "expected injury." In support of this theory, Wiley cites Bolin v. State Farm Fire & Casualty Co., 557 N.E.2d 1084, 1088 (Ind. Ct. App. 1990), which held that coverage is unavailable if bodily "injury . . . was practically certain to occur." Bolin, 557 N.E.2d at 1086. Wiley also emphasizes the Indiana Supreme Court's recent decision in Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279 (Ind. 2006). In Harvey, the insured pleaded guilty to involuntary manslaughter after pushing the decedent toward a river, at which point the decedent lost her balance, fell into the river, and drowned. Harvey, 842 N.E.2d at 1281. The Court reasoned that, although the insured had committed the intentional act of battery when he pushed the decedent, there was no evidence that the insured intended any ensuing injury,

6

let alone death.  Id. at 1287.  Therefore, the Court concluded, coverage was available.  According to Wiley, his actions were like those of the insured in Harvey: although he intended to strike Ballman, he did not intend for him to fall into the pool table.

However, Wiley misconstrues the application of Bolin and Harvey, which are factually distinguishable from the case at bar.  In Bolin, coverage depended upon whether the insured expected *any* bodily injury to result from his conduct.  Bolin, 557 N.E.2d at 1084-87.  Similarly, in Harvey, the Indiana Supreme Court stressed the importance of determining whether the insured actually intended to harm the other party.  Harvey, 842 N.E.2d at 1284-87.  Because the insured intended no harm, the Harvey Court did not reach the "intentional acts" exclusion in conducting its foreseeability analysis.  Harvey, 842 N.E.2d at 1288 ("We therefore need not consider whether . . . the exclusion is applicable on a theory that the intentional push itself directly caused a 'bodily injury' with the ensuing [injury] treated as a 'bodily injury' . . . of a different kind or degree . . . than that reasonably expected or intended."); see also Bolin, 557 N.E.2d at 1086 (holding that even an expectation that some injury is "practically certain" to occur is enough to trigger the exclusion).[2]

By contrast, Wiley clearly admitted that intended to harm Ballman.  Tr. of Guilty

---

[2]Thus, on the present facts, Bolin and Harvey serve to reinforce the rule that coverage is unavailable when the insured intended harm and the resulting injury was foreseeable.  See Barnett, 816 F.Supp. at 496.

Plea Hrg. at 9; Tr. of Sentencing Hrg. at 57-59.[3]  This intent to harm triggers the "intentional acts" exclusion contained in the Policy, which states that coverage is excluded for intended bodily injury, or expected injury resulting from an intentional act, "even if . . . [s]uch bodily injury . . . is of a different kind or degree than that intended or reasonably expected."  Thus, although Wiley may not have intended the grievous harm that resulted from his actions, given his clear admission that he intended harm to result from his conduct, the unambiguous language of the Policy excludes coverage.

In addition to Wiley's intent, the foreseeability of the resulting injury, and Wiley's stated expectation of that injury, also foreclose coverage.  The foreseeability of an injury is an objective inquiry, asking whether that injury would "reasonably be expected to result from the intentional or criminal acts of the insured person."  See Allstate Ins. Co. v. Brown, 16 F.3d 222, 225 (7th Cir. 1994).  This objective standard is met in the case at bar because one who strikes another would reasonably foresee that the other could, as a result, fall into a nearby inanimate object.  Wiley's own subjective belief, recounted at his sentencing hearing, lends further support to this finding:

> Q: So it wasn't unreasonable that if you hit him in the head, he was going to fall down and hit his head on something, was it?
> A: No ma'am.

Tr. of Sentencing Hrg. at 59.

---

[3]Wiley attempts to cloud his admitted intent and expectations by pointing out that he was inebriated at the time of the incident.  This is not, however, relevant, as it does not refute his clear admissions.  Moreover, even if he hadn't admitted this intent, such intent also may be inferred from the "nature and character" of his conduct.  Home Ins. Co. v. Nielsen, 332 N.E.2d 240, 244 (Ind.Ct.App. 1975); see also Harvey, 842 N.E.2d at 1290.

Because the injury Ballman suffered was "the foreseeable consequence of the insured's intentional or criminal acts," Wiley is not entitled to coverage under the Policy.[4] Barnett, 816 F.Supp. at 496.

## IV. Conclusion

For all of the foregoing reasons, Wiley is not entitled to coverage, defense, or indemnity under the Allstate Insurance Policy at issue.  Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Date: 01/26/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jon C. Abernathy
GOODIN ABERNATHY LLP
jabernathy@gamlawyers.com

Timothy Patrick Coriden
CORIDEN LAW OFFICES
timothyp@coriden.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
bjrife@msth.com

---

[4]This result is consistent with the holdings of Harvey and Bolin: whereas both of those cases involved resulting injuries that were utterly unforeseeable, Wiley admitted that he intended to harm Ballman and that the injury suffered by Ballman was reasonably foreseeable.

9

James Allen Shoaf
jamesashoaf@aol.com

Elizabeth J. Wysong
GOODIN ABERNATHY LLP
ewysong@gamlawyers.com